IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| QUENNEL AUGUSTA,<br>        Plaintiff,<br><br>v.<br><br>KYLE WINBIGLER, *et al.*,<br>        Defendants. | Case No. 4:16-CV-04115-SLD-JEH |

**Report and Recommendation**

Defendants, Kyle Winbigler, Jared Tapscott, and the Galesburg Police Department filed a motion to dismiss the complaint, and the *pro se* Plaintiff, Quennel Augusta, responded thereto. (D. 13, 18). United States District Judge Sara L. Darrow referred the motion to the undersigned for a Report and Recommendation. For the reasons set forth, *infra*, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

**I**[1]
**A**

Augusta alleges numerous violations of his constitutional rights stemming from a traffic stop which resulted in his arrest. Specifically, on January 3, 2016, Augusta drove his car past Galesburg Police Officer Kyle Winbigler. Because Augusta looked "shocked" when Officer Winbigler saw him, the officer did a u-turn and began following Augusta. He continued following Augusta for up to

---

[1] The Court construes the facts in the light most favorable to the Plaintiff, accepting them as true and drawing all inferences in the Plaintiff's favor. *Bell v. City of Chicago*, 835 F. 3d 736, 738 (7th Cir. 2016), *quoting Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). All of the facts set forth herein are taken from the Plaintiff's complaint.

eight blocks without the dash camera being activated. Officer Winbigler also engaged Officer Jared Tapscott to follow Augusta.

Eventually, Officer Winbigler pulled over Augusta for failure to signal, although Augusta alleges he did in fact signal. When Officer Winbigler walked up to Augusta's car, he did not ask for Augusta's license or insurance card, but instead asked the Plaintiff where he was coming from, where he was going to, and what he was doing "outside this time of night." (D. 1 at ECF p. 6). Augusta asked the officer if he wanted to see his license and insurance, but the officer ignored this question. Augusta then said he wanted his lawyer.

Officer Winbigler next asked the Plaintiff if he had something in his mouth. Although Augusta said "no," Officer Winbigler reached "to put his hand on his gun and with a loud command" told Augusta to open his mouth. *Id.* After Augusta opened his mouth, Officer Winbigler reached into the car "to choke" him, and Officer Jared reached in to help with the choking. *Id.* Augusta passed out from the choking, resulting in him going to the hospital.

**B**

From these facts, the Plaintiff alleges a number of constitutional violations. Specifically, he alleges, or the Court infers that he alleges:

1. A Fourth Amendment violation of Augusta's "expectation of privacy" and a Fourteenth Amendment due process violation stemming from officers following him for "about 8 blocks" without activating the dash camera;

2. A Fourth Amendment violation stemming from the pre-textual traffic stop without reasonable suspicion;

3. A Fourth Amendment violation for unreasonably prolonging the traffic stop;

4. A Fourth Amendment violation stemming from the warrantless search of his person;

5. A Fifth Amendment violation of taking Augusta's property without just compensation; and

6. A Fourth Amendment violation stemming from the alleged excessive force used when officers choked Augusta while searching his mouth.

## II

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should first identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It should then take the remaining, well-pleaded factual allegations, "assume their veracity[,] and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* This means that a complaint must provide "allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Where a plaintiff is *pro se*, however, the court is "required to liberally construe the *pro se* plaintiff's pleadings, however inartfully pleaded." *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir.1989) (internal quotation marks omitted) (collecting cases).

When claiming a deprivation of a federal constitutional right in violation of 42 U.S.C. § 1983, a plaintiff must allege two elements: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state . . . law." *Alvarado v. Litscher*, 267 F. 3d 648, 351 (7th Cir. 2001), *quoting Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Defendant's motion to dismiss primarily focuses on the first element: whether Augusta has properly alleged a deprivation of a federal

right in his complaint, and, rightly so, for there is no question that Augusta has adequately pleaded that the two individual officers were acting under color of state law in their capacity as police officers. *Thomas v. Pearl*, 998 F.2d 447, 449 (7th Cir. 1993) ("mere employment by the state is sufficient to convert a defendant into a state actor").

### III
### A

The Defendants first argue that the Court should dismiss the complaint against the Galesburg Police Department because a municipality may not be held vicariously liable for its employees' constitutional torts, and Augusta has not alleged a municipal policy or custom such that it could be held liable pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Augusta does not address this argument in his response.

The Court agrees that the complaint must be dismissed against the Galesburg Police Department. As an initial matter, the Court notes that the Galesburg Police Department is not a separate legal entity independent of the City of Galesburg and, therefore, not a suable entity. *See Reese v. Chicago Police Dep't,* 602 F. Supp. 441, 443 (N.D. Ill. 1984). Moreover, construing the complaint liberally as one against the City of Galesburg, the complaint should still be dismissed. As the City argues, "municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." *Eversole v. Steele*, 59 F. 3d 710, 715 (7th Cir. 1995), *quoting Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). Rather, a local governmental entity is only responsible for unconstitutional acts of its employees if those employees acted pursuant to an official policy or custom. *Eversole*, 59 F. 3d at 715, *citing Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 735-36 (1989). The complaint here alleges no constitutional violations pursuant to an official policy or custom. The City cannot

be held liable for the actions of its officers absent such an allegation, and, therefore, it is recommended that the complaint against the Galesburg Police Department be dismissed.

**B**

The Defendants are also correct that the complaint should be dismissed with respect to any claims stemming from Augusta being followed by officers for around 8 blocks. First, nothing in the Constitution prohibits a police officer while travelling on a public highway from following behind a citizen in his patrol car. Whatever "expectation of privacy" one may have when traveling on a public highway, it does not encompass a right to be free from being followed by a police officer for 8 blocks or so. *See United States v. Jones*, 565 U.S. 400, 460 (2012) ("relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable"); *United States v. Knotts*, 460 U.S. 276, 281-82 (1983) ("person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another"). Accordingly, no constitutional violation stems from the officers' act of following Augusta.

The failure of the officers to activate their dash camera also does not create a constitutional violation. In Augusta's response, he cites an Illinois statute, 625 ILCS 5/11-212, for the proposition that officers may not legally follow someone for more than two blocks without activating their dash camera. (D. 18 at ECF p. 1). However, the Illinois statute to which he directs the Court contains no such requirement. Moreover, even if Illinois required officers to activate dash cameras after following a citizen for more than two blocks, failure by an officer to follow such a requirement would not give rise to a *constitutional* violation. "Section 1983 of Title 42, United States Code, addresses violations of federal law and the United States Constitution; it is not a means to redress violations of state procedures." *Dye*

5

*v. Lennon*, 2007 WL 2436852 *7 (E.D. Wis. 2007), *citing Sandin v. Connor*, 515 U.S. 472, 478-83 (1995); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). No court has ever found the Constitution to require police officers to activate a camera after following someone for more than two blocks. Accordingly, it is recommended that any claims related to the officers' following of Augusta or their failure to activate their camera be dismissed.

## C

Moving to the actual stop of Augusta by Officer Winbigler, the complaint alleges that the officer made the stop in violation of the Fourth Amendment because it was pretextual and, contrary to the officer's stated reason for stopping him, Augusta did not fail to use his turn signal before making a turn. The Defendants argue that this claim should be dismissed because "[i]t is undisputed the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (D. 14 at ECF p. 4).

The Fourth Amendment prohibits unreasonable searches and seizures, and a traffic stop is a seizure of a person for Fourth Amendment purposes. *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). Such a seizure is permissible so long as an officer has "a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Moreover, even if a traffic stop is pretextual, such a stop is permissible if an officer observed a violation of the traffic laws prior to the stop. *Huff*, 744 F.3d at 1004, *citing Wren v. United States*, 517 U.S. 806, 810 (1996). Failing to signal before turning is in fact a violation of Illinois' traffic law. *See* 625 ILCS 5/11–709(a); 625 ILCS 5/11–804.

The defendants are correct that, if Officer Winbigler observed Augusta violate the traffic law, then the stop was constitutional. However, Augusta alleges that he *did not* violate the traffic law, and Officer Winbigler falsely claimed to

6

observe such a violation as a pretext for stopping him. This allegation accepted as true at this stage, *Reynolds*, 623 F.3d at 1146, is enough to survive a motion to dismiss. If Officer Winbigler did not observe a traffic violation as Augusta alleges in his complaint, then there was no "reasonable, articulable suspicion that criminal activity" was afoot, thereby making the stop unreasonable and violative of the Fourth Amendment. *Lawshea*, 461 F.3d at 859; *see Huff*, 744 F.3d at 1004 (affirming district court's refusal to find officers qualifiedly immune where a genuine issue of material fact existed regarding whether the officer actually perceived a traffic violation); *Williams v. Brooks*, 809 F.3d 936, 942 (affirming that no genuine issue of material fact existed related to a traffic stop of the plaintiff based upon his failure to signal where the plaintiff did *not* testify that he actually signaled, but instead asserted that it was his "normal habit" to do so). Accordingly, the Court finds that Augusta has sufficiently alleged a Fourth Amendment violation related to Officer Winbigler's stop of him, and therefore it is recommended that the motion to dismiss this claim against Officer Winbigler be denied.

## D

Next, the defendants argue that the Court should dismiss the complaint as it relates to Officer Winbigler's questions of Augusta after he stopped him. The defendants argue that the officer had the statutory authority to ask the plaintiff the questions alleged in the complaint, citing 725 ILCS 5/107-14 which provides that an officer "may demand the name and address of the person [stopped] and an explanation of his actions."

Regardless of what the Illinois statute allows, it is well established that "questions asked during detention may affect the reasonableness of that detention . . . to the extent that they prolong custody, but questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable . . .." *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002) (en

banc). Officers are allowed to ask questions unrelated to the purpose of the stop so long as those questions do not unreasonably lengthen the period of detention. *Id.* In light of *Childs*, there was nothing unconstitutional about the few, routine questions which Officer Winbigler posed to Augusta.

Nor are there facts alleged which would suggest that the questions Officer Winbigler asked unreasonably prolonged detention; Augusta makes no allegation regarding the length of detention, the amount of time it took for the questions to be asked, or even how long the total length of the encounter took. Even drawing all inferences in favor of Augusta, the three questions allegedly posed by the officer could not have taken more than a minute to ask. This cannot be said to have unreasonably lengthened the detention. *See e.g. United States v. Martin*, 422 F.3d 597 (7th Cir. 2005) (delay of 20-minutes waiting for a drug sniffing dog was not unreasonable); *United States v. Muriel*, 418 F. 3d 720, 726 (7th Cir. 2005) (police may ask a "moderate number of questions" as part of a traffic stop).

In light of the above, it is recommended that all claims related to the questions asked by Officer Winbigler and the length of detention be dismissed.

## IV
### A

In addition to the claims made in the complaint arising from the stop of Augusta, the complaint also alleges a number of constitutional deprivations related to the officers' attempts to get something out of the plaintiff's mouth. Specifically, Augusta alleges that Officers Winbigler's and Tapscott's reaching into his mouth and choking him in order to retrieve from him what was in his mouth was an unconstitutional, warrantless search of his person. The Defendants argue that the warrantless search of Augusta was constitutional under the plain view and exigent circumstances doctrines.

8

The Fourth Amendment protects individuals from unreasonable searches. *United States v. Husband*, 226 F. 3d 626, 629-30 (7th Cir. 2000), *citing Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Winston v. Lee*, 470 U.S. 753, 760 (1985); *Kraushaar v. Flannigan*, 45 F. 3d 1040, 1045 (7th Cir. 1995). Accordingly, the central question regarding Augusta's allegation concerning the officers' attempt to retrieve something from his mouth is whether the search was "reasonable" under the circumstances as alleged. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' *Terry v. Ohio*, 392 U.S. 1, 19 (1968)."). In other words, the Plaintiff's focus on the warrantless nature of the search of his mouth and the Defendant's focus on the plain view and exigent circumstances exceptions to the warrant requirement miss the point here. The question, rather, is whether Augusta has sufficiently alleged facts to demonstrate that the search of his mouth, *i.e.* forcibly reaching into his mouth to retrieve something from it, was reasonable under the circumstances. Stated another way, given the circumstances as alleged in the complaint, was the attempt to search Augusta's mouth permissibly within the scope of a search allowed by the Fourth Amendment as defined by *Terry*. *See United States v. Rainone*, 586 F.3d 1132, 1134 (7th Cir. 1978) (discussing the scope of a *Terry* search generally).

The complaint alleges that after having been pulled over ostensibly for a traffic law violation, the officers asked Augusta if he had something in his mouth, and, when he said "no," the officers nevertheless attempted to forcibly search his mouth, ultimately culminating in the officers choking Augusta. Given these allegations, Augusta has sufficiently alleged that the officers here unreasonably exceeded the scope of a permissible *Terry* search by electing to forcibly search his mouth. Specifically, as asserted by the Defendants, at best the officers may have

9

suspected that Augusta was secreting drugs in his mouth. However, the ordinary scope of a permissible *Terry* search is one for weapons, not drugs. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("The purpose of [a *Terry]* search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence."). Accordingly, at this stage of the case where the Court has only the allegations of the complaint taken as true, Augusta has sufficiently alleged that Officers Winbigler and Tapscott unconstitutionally exceeded the scope of a permissible *Terry* search when they searched his mouth for drugs. Therefore, it is recommended that the motion to dismiss as to this claim be denied.[2]

**B**

Finally, the Defendants argue that Augusta's Fourth Amendment excessive force claim should be dismissed because "no physical harm came from the removal of the cocaine" from his mouth. (D. 14 at ECF p. 7).[3] As alleged in the complaint, however, Augusta avers that Officers Winbigler and Tapscott choked him to the point of passing out, and he was taken to the hospital as a result. This allegation is not only enough to establish physical harm, but also enough to state an excessive force claim.

To state a Fourth Amendment violation stemming from the use of excessive force during an arrest, a plaintiff must allege facts establishing that the arresting

---

[2] Augusta also alleges that the search of his mouth was an unconstitutional taking of his property without just compensation in violation of the Fifth Amendment. This claim is frivolous, as a "search" is not a "taking"; Augusta in fact does not allege that anything was actually "taken" from his mouth from the search. One cannot sustain a claim under the Takings Clause without at least alleging that "property" was "taken." *See generally, Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)(discussing Takings Clause jurisprudence).

[3] The Defendants in their motion repeatedly reference facts not alleged in the complaint, such as the assertion that Augusta had 14 bags of cocaine in his mouth. Although these facts may be established during the discovery phase of the case and considered on a motion for summary judgment, the only facts that matter at this stage of the case are those alleged in the complaint. *See Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 674 (W.D. Wis. 2009) (noting that extrinsic evidence may not be considered on a motion to dismiss without converting it to a summary judgment motion).

officer's use of force is "unreasonable under the circumstances." See *Lester v. City of Chicago*, 830 F.2d 706, 708 (7th Cir. 1987), *citing Bell v. Milwaukee*, 746 F.2d 1205, 1278-79 & n. 88 (7th Cir. 1984). Courts must assess whether officers' actions are "objectively reasonable" in light of the facts and circumstances of the particular case. *Graham,* 490 U.S. at 397. Factors to be considered by the court include: "1) the severity of the crime, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *See Brownwell v. Figel,* 950 F.2d 1285, 1292 (7th Cir. 1991, *citing Graham,* 490 U.S. at 396.

Here, the severity of the crime involved with the stop of Augusta was a minor traffic offense, and there is nothing in the complaint to indicate that he presented any threat to the officers, resisted arrest, or attempt to flee. Although the Defendants assert in their motion that the officers sought to retrieve cocaine from Augusta's mouth for his own protection, these facts are not contained in the complaint and cannot be considered by the Court at this stage. *See n. 3,* supra. In light of the facts alleged in the complaint, Augusta's allegation that the officers, during the course of a traffic stop, choked him to the point of causing him to pass out in order to extract something from his mouth is sufficient to survive a motion to dismiss, and, accordingly, it is recommended that the motion to dismiss be denied as to this excessive force claim. *See e.g., Griffin v. Filipiak*, 2002 WL 1972272 (N.D. Ill. 2002) (denying summary judgment in an excessive force case involving officers' attempt to retrieve drugs from the plaintiff's mouth).

11

**V**[4]

To summarize, it is recommended that the motion to dismiss be granted as to all claims raised by the complaint except the following:

1. Fourth Amendment claim against Officer Winbigler for seizing Augusta without reasonable suspicion;

2. Fourth Amendment claim against Officers Winbigler and Tapscott for conducting an unreasonable search of Augusta's mouth; and

3. Fourth Amendment claim against Officers Winbigler and Tapscott for using excessive force in executing the search of Augusta's mouth.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so ordered.*

Entered on March 17, 2017

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

---

[4] The Defendants ask that, alternatively to their motion to dismiss, the Court conduct a merit review in this case pursuant to 28 U.S.C. § 1915A. Because the Court has through this Report and Recommendation identified the claims in this case upon which relief may be granted, a merit review is unnecessary.